IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN S. VETTRUS,                          Case No. 6:12-cv-00074-AA
                                          OPINION AND ORDER
          Plaintiff,

     v.

BANK OF AMERICA, N.A.,
a national association; U.S.
BANK NATIONAL ASSOCIATION,
a national association; and
RECONTRUST COMPANY, N.A., a
national association;

          Defendants.
_____

John S. Vettrus
5921 Montvallo St. SE
Salem, Oregon 97306
     Pro se plaintiff

Gregory A. Chaimov
Elleanor H. Chin
Davis Wright Trmaine, LLP
1300 SW Fifth Ave., Suite 2300
Portland, Oregon 97201
     Attorneys for defendants


Page 1 – OPINION AND ORDER

AIKEN, Chief Judge:

Defendants Bank of America, N.A. ("BOA"), U.S. Bank, National Association, as successor trustee to BOA, as successor trustee to LaSalle Bank, N.A., as trustee for certificate holders of Merrill Lynch Mortgage Investors Trust, mortgage loan asset-backed certificates series 2006 FFI[1] ("U.S. Bank"), and ReconTrust Company, N.A. ("ReconTrust") move to dismiss plaintiff John Vettrus' claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

In April 2004, plaintiff took out a mortgage loan from First Franklin Financial Corporation ("Franklin"), in the amount of $168,000,[2] to purchase a residential property (the "Property"). Pursuant to this transaction, plaintiff executed a promissory note (the "Note") in favor of Franklin. The Note was secured by a deed of trust (the "DOT"), which lists Franklin as the lender and beneficiary, and LandAmerica Lawyers Title as the trustee.[3] The

---

[1] Sued erroneously as "U.S. Bank National Association."

[2] Plaintiff also obtained a second loan from Franklin in the amount of $42,000, which was secured by a separate trust deed. Defendants are not seeking to foreclose on this loan.

[3] Plaintiff attached the DOT, Assignment of the DOT, Appointment of Successor Trustee, and Notice of Default and Election to Sell to his complaint; he also incorporated these materials by reference. See Compl. Exs. A, C, D, E. As such, the Court considers these documents pursuant to defendants' motion to dismiss.

DOT was duly recorded in Marion County, Oregon.

Pursuant to the DOT, plaintiff agreed to make monthly mortgage payments as required under the Note. Plaintiff also agreed that he would be in default, and subject to foreclosure, if he failed to make such payments. In addition, the DOT stipulated that Franklin could appoint a loan servicer. Accordingly, at some point after the loan was originated, BOA began servicing plaintiff's loan.

In October 2010, plaintiff stopped making the requisite loan repayments, thereby materially defaulting. Consequently, Franklin assigned its interest in the DOT to U.S. Bank; the Assignment of the DOT was recorded in the official records of Marion County on August 15, 2011. Also on August 15, 2011, U.S. Bank appointed ReconTrust to serve as successor trustee for the DOT. That same day, ReconTrust executed a Notice of Default and Election to Sell the Property. The Appointment of Successor Trustee and Notice of Default and Election to Sell were documented in the official records of Marion County. A trustee's sale was scheduled for December 21, 2011.

On December 19, 2011, plaintiff filed a complaint[4] in Marion County Circuit Court, alleging: (1) wrongful foreclosure; (2) quiet title; (3) violations of the Real Estate Settlement Procedures Act ("RESPA"); and (4) violations of Oregon's Unlawful Trade Practices

---

[4] While plaintiff is appearing pro se at this stage in the proceedings, Christopher Matheny, an attorney licensed in Oregon, drafted the subject complaint.

Act ("UPTA").  With his complaint, plaintiff also filed a motion

for a temporary restraining order ("TRO"), in which he requested

that defendants be enjoined from non-judicially foreclosing.  The

Circuit Court granted the TRO contingent upon plaintiff posting a

$1500 bond; as such, a foreclosure sale has not yet occurred.[5]  On

January 13, 2012, defendants removed plaintiff's claims to this

Court on the basis of diversity and federal question jurisdiction.

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief

can be granted," the court must dismiss the action.  Fed. R. Civ.

P. 12(b)(6).  To survive a motion to dismiss, the complaint must

allege "enough facts to state a claim to relief that is plausible

on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007).  For the purpose of the motion to dismiss, the complaint is

liberally construed in favor of the plaintiff and its allegations

are taken as true.  Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir.

1983).  However, bare assertions that amount to nothing more than

a "formulaic recitation of the elements" of a claim "are conclusory

and not entitled to be assumed true."  Ashcroft v. Iqbal, 556 U.S.

662, 680-81 (2009).  Rather, to state a plausible claim for relief,

the complaint "must contain sufficient allegations of underlying

facts" to support its legal conclusions.  Starr v. Bacca, 652 F.3d

---

[5] Plaintiff has yet to comply with the Circuit Court's bond
requirement.

1202, 1216, reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011).

## DISCUSSION

Defendants contend that plaintiff's claims fail both at the pleadings level and as a matter of law. Therefore, defendants argue that plaintiff's claims should be dismissed with prejudice. Conversely, plaintiff asserts that "his claims are coherently articulated"; plaintiff, however, also requests leave to file an amended complaint "if the [C]ourt finds one or more areas where the pleadings are weak." Pl.'s Resp. to Mot. Dismiss 34-35.

## I. Preliminary Matters

This Court must address two issues before reaching the substantive merits of defendants' motion. First, because nearly all of plaintiff's claims are contingent upon the conclusion that any loan within Mortgage Electronic Registration Systems, Inc. ("MERS") is unenforceable, the Court reviews the relevant legal background regarding MERS and its role in the foreclosure process. Second, to support his allegations, plaintiff requests that this Court take judicial notice of an Amicus Brief submitted by former Oregon Attorney General John Kroger in Hooker v. NW Trustee Servs., Inc., 2011 WL 2119103 (D.Or. May 25, 2011).

### A. The MERS System

Plaintiff asserts that defendants' non-judicial foreclosure actions were invalid because of MERS. Plaintiff's theory is novel; unlike the other non-judicial foreclosure cases in this District,

Page 5 - OPINION AND ORDER

MERS is not listed as the "beneficiary" in the DOT, nor did MERS assign the DOT or appoint a successor trustee in this case.

Rather, plaintiff contends that, because a MERS identification number "is still yet to be found for [p]laintiff's loan," defendants must have fraudulently obscured their involvement with MERS, "thereby leaving no trace of MERS to taint their illegal foreclosure attempt." Pl.'s Resp. to Mot. Dismiss 22.  In other words, plaintiff argues that there are a number of "non-publicly recorded loan documents" in the MERS system that evidence transfers of the Note and DOT, which defendants allegedly erased in order to effectuate a wrongful non-judicial foreclosure of the Property. Plaintiff also alleges that BOA's actions were invalid because it "received [its] rights from MERS and MERS itself had zero ownership interest or rights to give."  Id. at 21-22.

As such, plaintiff misconstrues the MERS system.  Namely, not every loan that is originated is part of MERS; in fact, a mortgage company must take distinct steps in order to participate in the MERS system.

MERS is a private electronic registration system "that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1038 (9th Cir. 2011); James v. Recontrust Co., 2012 WL 653871, *3 (D.Or. Feb. 29, 2012).  After a borrower acquires a loan, the original lender may sell its

Page 6 - OPINION AND ORDER

beneficial interest in the loan or change loan servicers. Cervantes, 656 F.3d at 1038; see also Compl. Ex. A, at 11 (DOT grants defendants the right to sell the Note or to change loan servicers at any time and without prior notice to plaintiff).

"[I]t has become [increasingly] common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded." Cervantes, 656 F.3d at 1039 (citations omitted); James, 2012 WL 653871 at *3 (citation omitted). MERS exists "to avoid the need to record [these] multiple transfers . . . by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender." Cervantes, 656 F.3d at 1039 (citation omitted).

In order to participate in MERS, companies that operate in the mortgage industry must first become members by registering and "pay[ing] a fee to use the tracking system." Id. In addition to becoming a member, in order to utilize this system, MERS must be designated in the trust deed, at the origination of the loan, "as a nominee for lender and the lender's 'successors and assigns,' and as the deed's 'beneficiary.'". Id.; James, 2012 WL 653871 at *4.

Under this system, MERS contends that, if the lender later sells or assigns its beneficial interest in the loan to another MERS member, "the change [need be] recorded only in the MERS database, not in county records, because MERS continues to hold the

deed on the new lender's behalf." Cervantes, 656 F.3d at 1039; James, 2012 WL 653871 at \*3-4. It is precisely this practice that contravenes the Oregon Trust Deed Act's ("OTDA") recording requirements. See, e.g., James, 2012 WL 653871 at \*18-20; Hooker, 2011 WL 2119103 at \*3-7; but see Beyer v. Bank of America, 800 F.Supp.2d 1157, 1161-62 (D.Or. 2011) (MERS is a valid beneficiary under the OTDA when designated as such in the trust deed); Reeves v. ReconTrust Co., 2012 WL 652681, \*7 (D.Or. Feb. 28, 2012); Stolz v. OneWest Bank, 2012 WL 135424, \*12 (D.Or. Jan. 13), adopted by 2012 WL 1093712 (D.Or. Mar. 30, 2012).

Here, however, it is undisputed that MERS is not listed as the beneficiary or nominee in the DOT. It is also undisputed that MERS is not otherwise named in, or a party to, any of the loan or foreclosure documents in this case. There is nothing in the record demonstrating that plaintiff's loan was part of the MERS system. In sum, plaintiff failed to allege any facts which indicate that MERS played a role in his loan or defendants' non-judicial foreclosure.

Therefore, plaintiff's allegations regarding MERS have no bearing on any issue in this case. Where there is no evidence indicating MERS' involvement in a non-judicial foreclosure, a plaintiff's claims based on the wrongfulness of the MERS system must be dismissed. See, e.g., Hubbard v. Bank of Am., 2011 WL 2470021, \*4 (D.Or. Apr. 21), adopted by 2011 WL 2462961 (D.Or. June

20, 2011). Accordingly, to the extent that plaintiff's claims are premised on MERS, defendants' motion to dismiss is granted.

B.    Request for Judicial Notice

In his response to defendants' motion, plaintiff moves for judicial notice of Mr. Kroger's Hooker Amicus Brief, which discusses the dangers of the MERS system. Motions, however, "may not be combined with any response." LR 7-1(b). Because plaintiff is proceeding pro se, his briefs are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). As such, the Court will consider his request for judicial notice as though it were properly raised in a separate motion.

Review of a 12(b)(6) motion is generally limited to the complaint. United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). The court nonetheless "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed.  R.  Evid.  201(b). Accordingly, facts contained in public records are generally considered appropriate subjects for judicial notice pursuant to Fed. R. Civ. P. 12(b)(6).  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted).  The court may not take judicial notice of documents, regardless of whether they meet

Page 9 - OPINION AND ORDER

the requirements of Fed. R. Civ. P. 201(b), that are unrelated to the matter at issue. Hart v. Parks, 450 F.3d 1059, 1063 n.2 (9th Cir. 2006).

The relevant facts in this case are largely undisputed. Further, the document that plaintiff seeks judicial notice of is case law and already part of the public record, such that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. As such, Mr. Kroger's Amicus Brief meets the requirements of Fed. R. Evid. 201(b). Nevertheless, as discussed above, the MERS system has no bearing on defendants' non-judicial foreclosure. This material is unrelated to the present dispute. Thus, plaintiff's request for judicial notice is denied.

## II. Wrongful Foreclosure Claim

Plaintiff alleges that defendants' foreclosure was wrongful under two theories. First, plaintiff asserts that the non-judicial foreclosure proceedings are illegitimate because he "has reason to believe" that the individuals who executed the Appointment of Successor Trustee and the Notice of Default and Election to Sell did not have the authority to do so. Compl. ¶¶ 11-12, 29. Specifically, plaintiff asserts that Lucy Mansourian wrongfully signed the Appointment of Successor Trustee, pursuant to her role as "assistant secretary" for U.S. Bank, because she is "not an assistant secretary for assignor but instead a manager for [BOA]";

Page 10 - OPINION AND ORDER

Maria Pilar Villavicenio likewise erroneously signed the Notice of Default and Election to Sell, pursuant to her role as "authorized signor" for ReconTrust, because she is "not an authorized signor for assignor, but instead an employee and/or manager for [BOA]." Id. at ¶¶ 11-12.

Second, plaintiff contends that defendants' actions are invalid because they "lack sufficient legal standing." Id. at ¶ 31. While plaintiff does not elaborate upon this theory, he does state in other portions of the complaint that defendants "do not have standing" because the Note and Deed of Trust "have been bifurcated and are not currently held by the same party." Id. at ¶¶ 17-21. In his response brief, plaintiff explains further that defendants do not have standing because "the Note was sold and securitized sometime before or shortly after the closing of [p]laintiff's loan (2004)," such that Franklin did not have any beneficial interest in the DOT to assign to U.S. Bank in 2011; he also argues that defendants lack standing because the Note and the DOT have been transferred numerous times, all of which were unrecorded. Pl.'s Resp. to Mot. Dismiss 19-24. In other words, plaintiff contends that defendants' actions are wrongful because defendants cannot prove that they own the Note.

A.    Ms. Mansourian's and Ms. Villavicencio's Allegedly Wrongful Actions

As an initial matter, allegations that a party lacked

Page 11 – OPINION AND ORDER

authority to execute a publicly recorded foreclosure document are, without more, insufficient to state a claim under Fed. R. Civ. P. 12(b)(6).   See, e.g., James, 2012 WL 653871 at *21; Beyer, 800 F.Supp.2d at 1162.   Plaintiff has not provided any factual basis for his "belief" that Ms. Mansourian is not an "assistant secretary" for U.S. Bank or that Ms. Villavicenio is not an "authorized signor" for ReconTrust.   Even assuming that they serve in some managerial capacity for BOA, plaintiff failed to allege any facts demonstrating that Ms. Mansourian and Ms. Villavicenio cannot "wear two hats" on behalf of both BOA and U.S. Bank or ReconTrust. James, 2012 WL 653871 at *21; Beyer, 800 F.Supp.2d at 1162.   Thus, plaintiff's vague and conclusory allegations regarding Ms. Mansourian's and Ms. Villavicencio's lack of authority fail to state a plausible claim for relief.

More importantly, Oregon law requires every notarial officer to independently verify that "the person appearing before the officer and [executing the document] is the person whose true signature is on the instrument."   Or. Rev. Stat. §§ 194.505(1), 194.515.   The notarial officer's signature on the instrument creates the presumption that he or she acted in accordance with this duty.   Coates v. Smith, 81 Or. 556, 564, 160 P. 517 (1916); see also In re Conduct of Weidner, 320 Or. 336, 348-49, 883 P.2d 1293 (1994) (failure to comply with Or. Rev. Stat. § 194.515 can result in criminal penalties).

Page 12 - OPINION AND ORDER

Here, the Appointment of Successor Trustee and Notice of Default and Election to Sell were signed by a notary. Thus, plaintiff's mere "belief" that Ms. Mansourian and Ms. Villavicencio lacked authority is insufficient, as a matter of law, to rebut the presumption that these documents were properly executed. Therefore, defendants' motion is granted to the extent that plaintiff's claim is premised on the allegedly wrongful actions of Ms. Mansourian and Ms. Villavicencio.

## B.   Defendants' Allegedly Wrongful Actions

Non-judicial foreclosures in Oregon are governed by OTDA.[6] James, 2012 WL 653871 at *4-5. The OTDA was enacted in order "to simplify the foreclosure process" by "permitt[ing] a trustee to foreclose the trust deed and sell the property, without judicial oversight, at a public sale following advertisement." Id. at *4. In order to "'protect [borrowers] from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting [borrower],'" the OTDA prescribes a detailed statutory procedure. Id. at *5 (quoting Staffordshire Inv., Inc. v. Cal-Western

---

[6] Generally, wrongful foreclosure actions are discreet from claims alleging violations of a state's non-judicial foreclosure statute. See Cervantes, 656 F.3d at 1043 (collecting cases). Regardless, this District has consistently construed common law wrongful foreclosure claims based on similar facts as challenging a defendant's compliance the OTDA. Id. at 1044 (citing Hooker, 2011 WL 2119103 at *3-7; see also Richard v. Deutsche Bank Nat'l Trust Co., 2012 WL 1082602, *8 (D.Or. Mar. 30, 2011).

Reconveyance Corp., 209 Or.App. 528, 542, 149 P.3d 150 (2006), rev.
denied, 342 Or. 727, 160 P.3d 992 (2007)). A creditor's failure to
strictly comply with these procedures is fatal to any non-judicial
foreclosure proceeding.   Id.; see also Staffordshire Inv., 209
Or.App. at 542.

In relevant part, the OTDA requires that all assignments of a
trust deed, as well as any appointment of successor trustee, be
recorded before the beneficiary, or one of its agents, initiates
non-judicial foreclosure.  Or. Rev. Stat. § 86.735(1).  The OTDA
defines "beneficiary" as "the person named or otherwise designated
in a trust as the person for whose benefit a trust deed is given."
Or. Rev. Stat. § 86.705(1).

Here, it is undisputed that Franklin was designated as
"beneficiary" in the DOT.  It is also undisputed that, as the
originating lender, Franklin is the party "for whose benefit the
trust deed is given."   Further, the transfer of the DOT from
Franklin to U.S. Bank was publicly recorded prior to defendants'
non-judicial foreclosure.  Similarly, the only change in trustee
from LandAmerica Lawyers Title to ReconTrust was recorded prior to
the non-judicial foreclosure.   As such, it is unclear on which
basis plaintiff is alleging that the non-judicial foreclosure was
wrongful, beyond merely concluding that defendants lack standing.
Because conclusory allegations are not entitled to the presumption
of truth, plaintiff's pleadings fail to state a plausible claim for

relief.

In addition, plaintiff's claim fails as a matter of law. Plaintiff is correct that, under Oregon law, a transfer of the promissory note automatically transfers the trust deed. See Schleef v. Purdy, 107 Or. 71, 78, 214 P. 137 (1923); James, 2012 WL 653871 at *19-21. As such, a split only occurs where the trust deed is assigned without the promissory note. In re Veal, 450 B.R. 897, 916 (9th Cir. BAP 2001). Plaintiff does not allege any facts which indicate that U.S. Bank was not the holder of the Note at the time it was formally assigned the DOT or that there were unrecorded transfers of the Note and DOT.

Thus, because the trust deed follows the promissory note, U.S. Bank acquired the DOT at the same time it acquired the Note; that U.S. Bank may have obtained plaintiff's Note sometime prior to the Assignment of the DOT in 2011 is irrelevant. See Schleef, 107 Or. at 78; James, 2012 WL 653871 at *19-21; see also Or. Rev. Stat. § 86.735(1) (assignments of the trust deed need only be recorded prior to the non-judicial foreclosure and not concurrent to when they actually occur). Further, that the holder of the Note is "a mortgage-backed security pool does not in any way impact [plaintiff's] rights and privileges under their transaction documents or Oregon statutes relating to the giving of a Deed of Trust or foreclosure thereof." Somers v. Deutsche Bank Nat'l Trust Co., Case Nos. CV 11-02-0133 and FE 110027, Letter Op. at 4

Page 15 - OPINION AND ORDER

(Clackamas Cnty. Cir. Crt. July 6, 2011). Thus, despite his legal conclusions to the contrary, nothing in the record intimates that the Note was unsecured from the DOT.

Finally, to the extent that plaintiff asserts that defendants cannot foreclose until they produce the Note, such an assertion is incorrect as a matter of law; presentation of the original promissory note is not required. See Beyer, 800 F.Supp.2d at 1159 (OTDA "does not require presentment of the Note or any other proof of 'real party in interest' or 'standing' other than the Deed of Trust," citing Stewart v. Mortg. Elec. Registration Sys., Inc., 2010 WL 1055131, *12 (D.Or. Feb. 9, 2010)); Tabb v. OneWest Bank (IndyMac), 2010 WL 5684402, *5 (D.Or. Nov. 1, 2010), adopted by 2011 WL 344593 (D.Or. Jan. 31, 2011) ("Oregon . . . does not require any party to a trustee's sale to produce a physical copy of the original note"); see also Or. Rev. Stat. § 86.735 (presentation of the promissory note is not listed as a requirement for non-judicial foreclosure).

Therefore, defendants' motion is granted as to plaintiff's wrongful foreclosure claim.

III. Quiet Title Claim

In his quiet title claim, plaintiff seeks a decree from this Court that he is the "owner [of the Property] in his name only." Compl. ¶ 21. In other words, plaintiff asserts that, because defendants "do not have standing" to foreclose, he is entitled to

Page 16 - OPINION AND ORDER

keep the Property free and clear of all encumbrances without having to repay the Note.  Id. at ¶¶ 15-21.

As discussed above, however, plaintiff has not alleged facts indicating that: (1) the Note was split from the DOT; (2) defendants did not have standing to foreclose; (3) defendants' non-judicial foreclosure proceedings were in any way improper; or (4) Ms. Mansourian and Ms. Villavicencio lacked authority to execute the Appointment of Successor Trustee and Notice of Default and Election to Sell, respectively.  For this reason, plaintiff fails to state a claim to quiet title.

This claim also fails as a matter of law.  "In general, a person may bring an equitable quiet title action to obtain resolution of a dispute relating to adverse or conflicting claims to real property."  See Staton v. BAC Home Loans Servicing, L.P., 2011 WL 2213800, *8 (D.Or. June 3, 2011) (citing Spears v. Dizick, 235 Or. App. 594, 598, 234 P.3d 1037 (2010)).  Even if plaintiff alleged that defendants failed to follow the proper foreclosure procedures, it is undisputed that defendants nonetheless had the right to foreclose based upon plaintiff's default under the Note.

Because plaintiff does not allege an ability to cure this default, he no longer has a valid claim for entitlement to the Property.  Id.; see also Rigor v. Freemont Inv. & Loan, 2012 WL 913631, *1 (D.Or. Feb. 13), adopted by 2012 WL 913566 (D.Or. Mar. 16, 2012) (plaintiff could not state a claim to quiet title where

Page 17 - OPINION AND ORDER

the complaint "fails to include any allegation that plaintiff has superior title to that of defendants, and that the subject loan has been satisfied or that plaintiff is ready, willing and able to tender the full amount owed on the loan").

Accordingly, there are no conflicting claims to the Property for this Court to resolve.  Thus, plaintiff's quiet title claim fails as a matter of law and defendants' motion is granted.

IV.  RESPA Claim

Next, plaintiff alleges that defendants violated "RESPA and the Frank-Dodd Act by failing to timely reply" to his qualified written request ("QWR").  Compl. ¶ 25.

RESPA governs "the servicing of the loan, rather than the creation or modification of the loan." Gates v. Wachovia Mortg., FSB, 2010 WL 2606511, *3 (E.D.Cal. June 28, 2010) (citing 12 U.S.C. § 2605).  Accordingly, a QWR under RESPA must only relate to servicing.  Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 WL 3476648, *11 (D.Or. Aug. 8, 2012); Kelly v. U.S. Bank, 2010 WL 4135028, at *12-13 (D.Or. July 29), adopted by 2010 WL 4116754 (D.Or. Oct. 14, 2010).  "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

Specifically, a QWR is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer" which allows the servicer to identify the name and

Page 18 - OPINION AND ORDER

account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Hubbard, 2011 WL 2470021 at *4 (quoting 12 U.S.C. § 2605(e)(1)(B)). In response to such an inquiry, the servicer must, within twenty days, acknowledge receipt in writing and, within sixty days, commence an investigation and either: (1) correct the account in error; (2) send a written explanation to the borrower explaining why the account is correct; or (3) provide the requested information "or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e).

Thus, to be liable under RESPA for the failure to respond to a QWR, the plaintiff must, as a threshold requirement, demonstrate that the request for information contained a statement of error regarding the loan service or otherwise sought information relating to the receipt of any scheduled periodic payments. Accordingly, a request that is a "general notice of inquiry" or merely seeks documentation without reflecting a belief by the borrower that his account is in error does not qualify as a QWR. Eifling v. Nat'l City Mortg., 2011 WL 893233, *2-3 (W.D.Wash. Mar. 15, 2011).

Beyond formulaically reciting the elements, plaintiff failed to plead any facts in support of his RESPA claim; in fact, plaintiff did not attach the alleged QWR to his complaint or

Page 19 - OPINION AND ORDER

include any information regarding its contents. See Compl. ¶¶ 13, 24-28; see also Pl.'s Resp. to Mot. Dismiss 25 ("[p]laintiff's former coun[sel] failed to attach [the QWR] to the Complaint"). Accordingly, plaintiff failed to demonstrate that his correspondence met the requirements of section 2605. See, e.g., Lettenmaier, 2011 WL 3476648 at *12 (failure to attach the alleged QWR to the complaint is a sufficient basis for dismissal pursuant to Fed. R. Civ. P. 12(b)(6)).

To the extent that the complaint does contain factual allegations, they support the conclusion that plaintiff's correspondence was not related to the servicing of his loan. To the contrary, plaintiff acknowledges that he stopped making any scheduled periodic payments on the Note nearly one year prior to sending the purported QWR. Compl. ¶ 7. Plaintiff also contends that the letter he sent to BOA sought "information regarding his loans and information as to who owned them." Id. at ¶ 13.

Plaintiff did attach a copy of the purported QWR to his response; this document further confirms that his correspondence was not related to loan servicing. At no point does plaintiff articulate a belief that his account was in error. See Pl.'s Resp. to Mot. Dismiss Ex. A. Instead, plaintiff's letter was primarily aimed at uncovering documents relating to the ownership of the Note. Id. In other words, plaintiff does not object, at any point, to the manner in which BOA was servicing his loan.

Page 20 - OPINION AND ORDER

Under RESPA, however, "neither an inquiry into the ownership of a loan, nor an allegation of defective loan documentation, are sufficient to transform an otherwise non-qualifying correspondence into a QWR." Gates, 2010 WL 2606511 at *3 (citations omitted); see also Kelly, 2010 WL 4135028 at *13; Hubbard, 2011 WL 2470021 at *4. Thus, because plaintiff's letter did not relate to the servicing of his loan, BOA was under no obligation to respond.

Even construing plaintiff's correspondence as a QWR, plaintiff's RESPA claim must nonetheless be dismissed. On December 13, 2011, BOA responded in writing to plaintiff's correspondence. See Pl.'s Resp. to Mot. Dismiss Ex. A. In its letter, BOA provided some information but declined the majority of plaintiff's requests, explaining that a

> QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. [Plaintiff's letter] seeks information which goes well beyond that which is available through QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the loan.

Id.

As such, plaintiff is unable to establish that BOA's actions harmed him, especially since it ultimately responded to his letter. A claim under RESPA for failure to respond to a QWR requires a showing that the violation proximately caused a plaintiff's

Page 21 - OPINION AND ORDER

damages.  Lettenmaier, 2011 WL 3476648 at *12 (citing 12 U.S.C. §
2605(f)(1));  see also  Frison v. WMC Mortgage Corp., 2011 WL
4571753, *4 (S.D.Cal. Sept. 30, 2011).

Plaintiff alleges BOA's "failure to provide the written
response has materially damaged [his] ability to protect his legal
interest in the [Property] and prevent [its] non-judicial
foreclosure."  Compl. ¶ 26.  Plaintiff, however, is on the
precipice of losing his home due to his failure to repay his loan
and not because of a failure by BOA to respond to a QWR.  It is
undisputed that, at the time plaintiff sent the alleged QWR, he had
not made a scheduled periodic repayment on the Note for almost one
year.  Thus, plaintiff has not alleged any injury proximately
caused by BOA's failure to timely respond to his correspondence.
Therefore, for this additional reason, plaintiff fails to state a
claim under RESPA.

Accordingly, defendants' motion is granted as to this issue
and plaintiff's RESPA claim is dismissed.

V.  UPTA Claim

Finally, plaintiff alleges that defendants violated Or. Rev.
Stat. § 646.607(1) by "initiating a foreclosure action, when [they]
knew, or reasonably should have known, that they did not properly
hold the [Note], and that they had no basis or legal right to order
[ReconTrust] to initiate the foreclosure action."  Compl. ¶ 39.

The UPTA extends a private cause of action to "any person who

Page 22 - OPINION AND ORDER

suffers any ascertainable loss of money or property" as a result of an unlawful trade practice. Or. Rev. Stat. § 646.638(1). A person engages in an unlawful practice when, in the course of business, he or she "[e]mploys any unconscionable tactic in connection with the sale [or] other disposition of real estate . . . or collection or enforcement of an obligation." Or. Rev. Stat. § 646.607(1). Thus, to prevail under UPTA, a plaintiff must prove: (1) the existence of an unfair trade practice; (2) causation; and (3) damages. Feitler v. Animation Celection, Inc., 170 Or.App. 702, 708, 13 P.3d 1044 (2000).

Here, plaintiff failed to allege any of the requisite elements. First, as discussed above, defendants have standing to non-judicially foreclose; further, plaintiff has not alleged facts demonstrating that defendants' actions contravened the OTDA or were otherwise wrongful. As such, he likewise is unable to demonstrate that defendants' commencement of a non-judicial foreclosure proceeding was an "unconscionable tactic."

Second, even construing plaintiff's assertion that he "suffered emotional distress and interference with his right to occupy and enjoy the [Property]" as sufficient to establish the first element, he nonetheless failed to establish causation. Compl. ¶ 40. Plaintiff concedes that he has been in material default under the Note for almost two years. The DOT unambiguously grants defendants the right to foreclose under these circumstances.

Page 23 - OPINION AND ORDER

Thus, even assuming that the non-judicial foreclosure proceedings were contrary to law, plaintiff failed to demonstrate that defendants' actions are attributable to anything other than his own failure to repay the Note.

Third, plaintiff does not allege a loss of assets, nor can he, as he is still in possession of the Property. Plaintiff therefore neglected to plead damages arising out of defendants' allegedly unlawful trade practices. As such, defendants' motion is granted as to plaintiff's UTPA claim.

## CONCLUSION

Defendants' Motion to Dismiss (doc. 7) is GRANTED. Accordingly, defendants' request for oral argument is DENIED as unnecessary. Plaintiff, however, is GRANTED leave to file an amended complaint within twenty days of the date of this opinion, at which point defendants may renew their motion to dismiss. Defendants' Motion to Dissolve the Temporary Restraining Order (doc. 17) is DENIED. The TRO will remain in place until all issues regarding the Property are resolved, provided that plaintiff posts a bond or makes a deposit in the Court's registry, in the amount of $1500, within twenty days of the date of this opinion.

Page 24 - OPINION AND ORDER

IT IS SO ORDERED.
Dated this __13th__ day of July 2012.

_____
Ann Aiken
United States District Judge